J-S02035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BIAN LIN, JIE HONG, HONGDAN DONG, HUILING LIN, JING LIN, JUAN XIAO, KUNFENG CHEN, LIANG HE, LILY LIN, LING DAN WU, LING LI, BINGJING LIN, LING WANG, MARY LIYI MA, MEIFANG CHEN, MEIMEI TANG, QI CHEN, QIREN LIANG, QIUMEI XU, RONGJIAO YIN, SHAO WANG, SYIN HU, CAN HUAN LI, WEI GAO, WENQIONG ZHAO, WENYUN GAN, XIA LIN, XIAOMEI HE, XIAOQING ZHENG, XIAOYAN WEI, XIU LI, XIUWEN LIU, XIUYUN ZHAO, CUI LIN, XUHONG ZHANG, YAYUN ZOU, TEQING TANG, YIJING ZHENG, YING XIAO, YING ZHENG, YUHUA ZOU, YUN ZOU, HUAN ZHOU, DANFENG LIN, DANRONG NI, DANTING LU, FENGJUAN YANG, GENG CHEN | : : : : : : : : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br>No. 2147 EDA 2023 |
| v. | : : : : : | |
| LI JUN OUYANG, LIVIA DANDAN YANG, YANG'S COSMETIC, LLC, YUN YE, CHEN YE LLC, JOHN DOE 1-10 AND DOE ENTITIES 1-10 | : : : : : : : | |
| APPEAL OF: LIVIA DANDAN YANG AND YANG'S COSMETIC, LLC | : : | |

Appeal from the Order Entered July 31, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 230202158

BEFORE: LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

---

[*] Former Justice specially assigned to the Superior Court.

MEMORANDUM BY STEVENS, P.J.E.:     **FILED MARCH 13, 2024**

Livia Dandan Yang and Yang's Cosmetic, LLC, ("Defendants/Appellants") appeal from the order entered in the Court of Common Pleas of Philadelphia County denying without prejudice their motion to stay proceedings in the present civil case pending the resolution of a hypothetically possible, but still non-existent, criminal case that they contend will share issues and facts with the present civil case.  Discerning no error with the trial court's six-factor analysis leading it to conclude that, on balance, the facts warranted denial of their motion despite concerns that civil litigation may implicate their privileges against self-incrimination, we affirm.

On April 12, 2023, Bian Lin, *et al*, ("Plaintiffs/Appellees") filed an Amended Complaint against Defendants/Appellants alleging, among other things,[1] fraud committed through Defendants/Appellants' establishment and operation of an online Ponzi scheme.[2]  According to the Amended Complaint,

---

[1] Plaintiffs/Appellees brought the following claims against Defendants/Appellants in their Amended Complaint:

Count I   --  Fraud;
Count II --  Civil Conspiracy to Commit Fraud;
Count III --  Breach of Contract;
Count IV --  Unjust Enrichment;
Count V --  Violations of Pennsylvania Unfair Trade Practices & Consumer Protection Act; and
Count VI -- Negligent Misrepresentation.

[2]  A Ponzi scheme is defined as: "A fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments. *(Footnote Continued Next Page)*

Defendants/Appellants created and hosted online chat groups on WeChat, a social media platform popular with the "Chinese diaspora around the world." Amended Complaint at 6. Defendants/Appellants allegedly enlisted the Plaintiffs/Appellees as group members, instructed them to buy merchandise online by paying the purchase price plus an additional large monetary deposit on the promise that Defendants/Appellants eventually would refund all monies paid, thus "circuitously providing Plaintiffs/Appellees with 'free' merchandise." *Id.* at 7.

The Amended Complaint included an example offer instructing Plaintiffs/Appellees to pay a $500 deposit in addition to the $179 purchase price for a Kindle tablet available on Amazon. In essence, the Amended Complaint averred, this was just one of Defendant/Appellants' many fraudulent promises that Plaintiffs/Appellees over time would acquire desirable products for free if they initially paid inflated amounts and waited 90 days for their full refund. *Id*. In fact, the Amended Complaint alleged, Defendants/Appellants illegally retained many deposits and later directed purchasers to pay a portion of their deposits directly to third parties. Plaintiffs/Appellees claim they were defrauded more than $535,000 in deposits that were never returned. *Id.* at 8.

_____

Money from the new investors is used directly to repay or pay interest to earlier investors, usu. without any operation or revenue-producing activity other than the continual raising of new funds." Black's Law Dictionary 1198 (8th ed. 2004).

Against Plaintiffs/Appellees' Amended Complaint, Defendant/Appellant Yang filed preliminary objections, to which Plaintiffs/Appellees filed an Answer. Co-Defendants, meanwhile, filed an Answer with New Matter to the Amended Complaint, as well as crossclaims against Yang, and counterclaims. Defendant/Appellant Yang filed preliminary objections to Co-Defendants' crossclaims. In turn, Defendant/Appellant Yang filed preliminary objections to the Co-Defendants' crossclaims, and Plaintiffs/Appellees filed preliminary objections to Co-Defendants' counter claims. On June 14, 2023, the trial court entered an order overruling Defendant/Appellant Yang's preliminary objections to Plaintiffs'/Appellees' Amended Complaint.

On July 6, 2023, Defendants/Appellants filed a Motion to Stay civil proceedings for a minimum of six months, claiming they were targets of a concurrent criminal investigation by the FBI and the U.S. Attorney's Office for the Southern District of New York. In the motion, Defendants/Appellants alleged that on or about April 23, 2023, Yang observed and overheard F.B.I. agents confront civil co-defendant Yun Ye, *a/k/a* "Yun", in a parking lot and ask him to cooperate in their investigation into the WeChat sales scheme. The Motion to Stay further alleged one of the F.B.I. agents acknowledged Yang as she approached and said to her, "We know who you are." Defendants/Appellants' Motion to Stay, ¶ 10.

Based on this encounter, Yang asserted that as a target of the investigation she was entitled to the protections of the Fifth Amendment, which not only protects one against compulsion to bear witness against oneself

- 4 -

in a criminal prosecution but also privileges one to refuse answering official questions asked in any other proceeding, civil or criminal, where the answers might incriminate in future criminal proceedings. Defendants/Appellant's Motion to Stay at ¶ 14 (citing **Commonwealth v. Brown**, 26 A.3d 485, 493-94 (Pa. Super. 2011). The motion continued, "As such, Defendant, Livia Dandan Yang respectfully requests [the trial court] stay this matter until the criminal investigation (and any related criminal prosecution) is completed." Motion to Stay at ¶ 19.[3]

In the trial court's order of July 31, 2023, it applied the pertinent six-factor test under **Keese v. Dougherty**, 230 A.3d 1128 (Pa. Super. 2020), discussed *infra*, to deny the motion to stay without prejudice against Defendants/Appellants to re-raise it under changed circumstances. Specifically, the trial court found that under the **Keesee** test Plaintiffs/Appellees' interest in an uninterrupted civil proceeding outweighed the Defendants/Appellants' interests in avoiding discovery and cross-

_____

[3] Paragraph 19 thus contradicts Defendants/Appellants' claim that their Motion to Stay sought only a six month stay. While the copy of the Defendants/Appellants' attached proposed order does contain language that the matter would be stayed "for a period of six months unless otherwise ordered by this Court," The Defendants/Appellants' Motion to Stay twice asked for a stay of indefinite duration, once in Paragraph 19 and a second time in its final, "Wherefore" paragraph, which states: "**WHEREFORE**, Defendants, Livia Dandan Yang and Yang's Cosmetic LLC, by and through their undersigned counsel, respectfully requests this Honorable Court stay this matter pending the resolution of the criminal investigation and any prosecutions therefrom." Motion to Stay, at 7. The motion itself, therefore, sought an indefinite stay dependent upon both a criminal investigation of uncertain scope and application and a prosecution that did not yet exist. **See** *infra*.

examination that could elicit their invocation of the 5th Amendment's right against self-incrimination, for the following reasons: (1) Defendants/Appellants failed to demonstrate the existence of an impending, related criminal case with issues overlapping the current civil case; (2) Plaintiffs/Appellees' interests in expeditious civil proceedings and the prejudice to the Plaintiffs/Appellees caused by a delay in this civil case weighs in favor of denying the stay; (3) denying the stay promotes judicial resource efficiency; and, (4) denying the stay promotes the public's interest. Trial Court Opinion, 8/28/23, at 5. This timely appeal followed.

Appellant raises the following issue for this Court's review:

1. Did the trial court abuse its discretion by denying Yang's Motion to Stay the civil proceedings for a minimum period of six months, thereby endangering Yang's Constitutional right to remain silent and Yang's ability to present a complete defense in favor of Bian Lin, et al.'s interest in expeditious civil proceedings, ensuring such civil proceedings will be decided not on the merits but on negative inferences arising from Yang's invocation of the Fifth Amendment privilege against self-incrimination?

2. Did the Trial Court abuse its discretion by not crediting the facts alleged in Yang's Motion to stay when Bian Lin, et al. did not deny Yang's interaction with the F.B.I. and in fact admitted that a criminal investigation is underway?

Brief of Defendants/Appellants at 7.

Initially, we note that the order currently before us is interlocutory, and there is usually no appeal from an order granting or denying a stay unless it satisfies the collateral order doctrine. **Keesee**, 230 A.3d at 1131-32. **See Curry v. Paradox Ltd. Liab. Co.**, No. 1698 EDA 2022, 2023 WL 1880406, at

- 6 -

\*1 (non-precedential decision) (Pa. Super. 2023)[4] (citing **Washington v. FedEx Ground Package System, Inc.**, 995 A.2d 1271, 1275 (Pa. Super. 2010)); **see also Reynolds Metals Co. v. Berger**, 223 A.2d 855, 857 (Pa. 1966) (accord). In **Keesee**, "this Court recognized an exception to the general rule. We held that orders denying stays in civil actions are immediately appealable under Rule of Appellate Procedure 313(b), provided defendants simultaneously face criminal charges relating to the underlying incident." **Curry**, **supra** at \*1. Specifically, in **Keesee**, we found the appellants' rights against self-incrimination would be "irrevocably lost" "[w]ithout immediate review, [as] [a]ppellants would either forgo testifying on their own behalf in the civil action or risk providing answers that might incriminate them in the *pending criminal proceedings*." **Id**. at 1133 (emphasis added).

In the case *sub judice*, we agree with the trial court's finding that scant evidence of record supports Defendants/Appellees' claim that they face imminent or pending criminal charges. Nevertheless, in the exercise of caution with respect to Defendants/Appellees' Fifth Amendment right against self-incrimination, we decline to find the present matter unappealable, find the collateral order doctrine satisfied, and proceed to the merits of Defendants/Appellants' claim.

---

[4] While **Curry** is an unpublished non-precedential memorandum decision, it may still be cited for its persuasive value. **See** Pa.R.A.P. 126(b) (providing that unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

This Court has recognized:

> The decision to grant or deny a motion to stay is within the sound discretion of the trial court, and we will review that decision for abuse of discretion. ***See generally In re Upset Sale, Tax Claim Bureau of Berks County***, 505 Pa. 327, 479 A.2d 940, 946 (1984). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused." ***Cigna Corp. v. Executive Risk Indem., Inc.***, 111 A.3d 204, 211 (Pa. Super. 2015), *appeal denied*, 633 Pa. 773, 126 A.3d 1281 (2015).

***Keesee*** at 1128.

In ***Keesee***, this Court addressed, as a matter of first impression, **"the appropriate balancing test or factors"** a trial court should consider when entertaining a motion to stay a civil case pending resolution of a related criminal case. ***Id.*** at 1133. The Court explained:

> We are guided by this Court's acknowledgment in ***Spanier***[ ***v. Freeh***, 95 A.3d 342 (Pa. Super. 2014)] of the six-factor balancing test set forth in ***In re Adelphia Communications Sec. Litig.***, No. 02-1781, 2003 WL 22358819 (E.D. Pa. May 13, 2003), although we find no adoption of this specific balancing test by our Supreme Court. ***See Spanier***, 95 A.3d at 345.
>
> In ***Adelphia***, the United States District Court for the Eastern District of Pennsylvania held,
>
>> In deciding whether to stay a civil case pending the resolution of a related criminal case, courts consider many factors, including: **(1)** the extent to which the issues in the civil and criminal cases overlap; **(2)** the status of the criminal

- 8 -

proceedings, including whether any defendants have been indicted; **(3)** the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; **(4)** the burden on the defendants; **(5)** the interests of the court; and **(6)** the public interest.

*Adelphia*, 2003 WL 22358819 at *3. The *Adelphia* court considered all six of the factors in a balancing test to determine whether the grant of the stay was appropriate. *Id.* at *3-*7, *see also Spanier*, 95 A.3d at 345 (noting the appropriate test is a six-factor balancing test).

Consideration of these six factors in deciding whether to grant or deny a motion to stay a civil proceeding pending the resolution of a related criminal matter is further supported by the four factors our Supreme Court considered when determining whether to grant or deny a motion to stay a case pending an appeal. *See Pa. Pub. Util. Comm'n v. Process Gas Consumers*, 502 Pa. 545, 467 A.2d 805, 809 (1983) (stating, "the standards established by the [court in *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921 (D.C. Cir. 1958)] as refined by the [*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977)] decision provide a rational basis for the issuance of a stay pending appeal and are the criteria to be followed by the courts of this Commonwealth" (emphasis added)). In *Process Gas*, our Supreme Court held the grant of a motion to stay pending appeal is warranted if:

1. The petitioner makes a strong showing that he is likely to prevail on the merits.

2. The petitioner has shown that without the requested relief, he will suffer irreparable injury.

- 9 -

3. The issuance of a stay will not substantially harm other interested parties in the proceedings.

4. The issuance of a stay will not adversely affect the public interest.

*Process Gas Consumers*, 467 A.2d at 808. The *Process Gas* four-factors test served as a template employed by the *Adelphia* court to assess the propriety of staying a civil proceeding pending the resolution of a related criminal case. Therefore, the factors identified in *Process Gas*, as augmented by the district court in *Adelphia*, are the appropriate factors for a court to consider, at a minimum, when deciding to grant or deny such a motion to stay.

*Id.* at 1133-34.

*Zeigler v. Naidu*, No. 1125 EDA 2023, 2024 WL 243450, at *4–5 (non-precedential decision) (Pa. Super. Ct. Jan. 23, 2024).

Defendants/Appellants' two issues coalesce to challenge the trial court's application of the first two *Keesee* factors, which in this case are inextricably intertwined. The trial court found that Defendants/Appellants' failure to demonstrate the existence of either a criminal investigation targeting them or the impending filing of criminal charges precluded their ability to show an overlap of issues between the civil case and hypothetical criminal case. Plaintiffs/Appellees agree, maintaining that the most Defendant/Appellant Yang had alleged was that an F.B.I. agent indicated he knew who she was as he was encountering a co-defendant in the civil case. Defendants/Appellants counter that because their assertion of the F.B.I. agent's comment to Ms. Yang went unchallenged by Plaintiffs/Appellants, the trial court was bound to accept

- 10 -

the existence of a formal criminal investigation and pending indictment against Yang.

Specifically, the trial court aptly noted that, at the time of Defendants/Appellants' motion, Ms. Yang had not been arrested or indicted, nor had she shown that an arrest or an indictment was imminent and what issues would arise in such a criminal case.[5]  This procedural history led the trial court to cite authority acknowledging that courts generally do not stay civil cases absent evidence of, at least, an indictment in an existing criminal case.  Trial Court Opinion at 2 (citing **Adelphia** at *1-2) (requiring proof that an arrest or indictment is imminent; denying reconsideration of order staying civil case where other defendants had been separately but relatedly indicted); **Porat v. Temple Univ. of Commonwealth Sys. of Higher Educ.**, 296 A.3d 613 (Pa. Super. 2023) (noting that only after U.S. Attorneys indicted plaintiff did the trial court stay the pending and related civil case)).  **See also**, **Curry**.

As Defendants/Appellants' status as possible targets of a criminal investigation had not progressed beyond the theoretical or speculative, we discern no error with the trial court's application of the critical first two **Keesee** factors to find they could not show significant overlap of issues between the civil case and a criminal case where charges had not been filed and there

---

[5] The trial court made this determination without prejudice against Defendants/Appellants to move for a stay upon new, specific evidence demonstrating their status as specified targets of a criminal investigation.

lacked substantiated evidence that a tangible criminal probe into Defendants/Appellants existed at the time their motion to stay was filed.

With respect to the remaining four **Keesee** factors, Defendants/Appellants' offer only truncated, superficial arguments, unsupported by citations to authority. For example, for the third factor requiring the trial court to weigh the plaintiff's interest in expeditious civil proceedings against the prejudice to the plaintiff caused by delay, Defendants/Appellants summarily posit that the Plaintiffs' prejudice would have been "minimized", without explanation as to how this would be so, had the trial court adopted their proposed stay of a minimum of six months.

A similar conclusion attends the remainder of the **Keesee** six-factor analysis, which incorporates the **Process Gas** factors, as augmented by the decision in **Adelphia**. Notably, in that vein, a review of Defendants/Appellants' position under the first two **Process Gas** factors discloses no strong showing that they are likely to prevail on the merits, which, under the present facts, impairs their ability to show that without the motion to stay they will suffer irreparable injury. Similarly, the fourth **Process Gas** factor also militates against Defendants/Appellants' motion to stay, as the underlying facts of the civil matter assert a public interest in expeditious proceedings.

Nothing in Defendants/Appellants' arguments, therefore, supplies grounds to upset the trial court's order and opinion addressing all six **Keesee**

factors in accordance with our jurisprudence before denying without prejudice Defendants/Appellant's Motion to Stay.  For that reason, we affirm the order entered below and, to that extent, adopt the trial court opinion for its application of the **Keesee** analysis to the particular facts of the present case.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  3/13/2024